UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MARCELINA R., | ) | |
| | ) | |
| Plaintiff, | ) | No. 23-cv-181 |
| | ) | |
| v. | ) | Magistrate Judge Keri L. Holleb Hotaling |
| | ) | |
| MARTIN J. O'MALLEY, Commissioner | ) | |
| of the Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Marcelina R.[2] ("Plaintiff") appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") ("SSA") denying her disability insurance benefits under the Social Security Act ("the Act"). For the reasons set forth below, Plaintiff's motion for summary judgment [Dkt. 21] is DENIED, and the Commissioner's motion for summary judgment [Dkt. 27] is GRANTED. The Commissioner's decision is AFFIRMED.

**I.    BACKGROUND**

    **a. Procedural History**

On January 22, 2021, Plaintiff filed a Title II application for disability insurance benefits, alleging disability as of March 9, 2020. [Administrative Record ("R.") 13.] The initial claim was denied on October 13, 2021, and denied again upon reconsideration on March 21, 2022. *Id*. Plaintiff requested an Administrative Hearing, after which the ALJ held the record open for an additional 30 days to allow Plaintiff to submit additional medical evidence. *Id*. On August 24,

---

[1]    On December 23, 2023, Martin J. O'Malley was sworn in as Commissioner of the Social Security Administration; pursuant to Federal Rule of Civil Procedure 25(d)(1), he is substituted as the proper defendant for this action.

[2]    In accordance with Northern District of Illinois Internal Operating Procedure 22, the court refers to Plaintiff only by her first name and the first initial of her last name.

2022, the ALJ issued a decision finding Plaintiff was not disabled. [R. 12-31.] The Appeals Council denied Plaintiff's request for review [R. 1], rendering the Decision of the Appeals Council the final decision of the Commissioner, reviewable by the District Court under 42 U.S.C. § 405(g); *see* 20 C.F.R. § 404.981. Consequently, Plaintiff filed this lawsuit seeking review. [Dkt. 1.]

### b. Relevant Personal and Medical Background

Plaintiff was 41 years old on her alleged disability onset date. [R. 30.] She completed high school and is certified as a medical billing specialist. [R. 212.] Her prior work experience includes roles as a healthcare manager, benefits advisor, and customer service representative. [R. 30.] In December 2019, Plaintiff was diagnosed with tarsal tunnel syndrome in the left foot. [R. 24.] In March 2020, she underwent a tarsal tunnel release and multiple nerve decompression procedures on her left ankle and foot. *Id.* Subsequently, Plaintiff was diagnosed with Complex Regional Pain Syndrome I ("CRPS") of the left lower limb and other chronic pain conditions. [R. 76.] She underwent a Dorsal Root Ganglion ("DRG") stimulator trial in November 2021, resulting in a 60-70% improvement, leading to the implantation of a permanent DRG stimulator. *Id.* Immediately after receiving the permanent DRG stimulator, Plaintiff reported improvement and substantial relief of pain in the left lower extremity as well as increased activity. [R. 25.] However, by June 2022, Plaintiff reported she had been experiencing vibrations in her back and legs since the time of the implant; she requested and underwent reprogramming of the stimulator that same month. [R. 46, 957, 959.] At the time of the Administrative Hearing, she was still in the process of recovering from the reprogramming surgery. [R. 26.]

Plaintiff underwent treatment with a psychologist to manage her pain prior to undergoing the DRG trial. [R. 75.] There were no psychological concerns identified regarding Plaintiff receiving a stimulator. [R. 17.] In October 2021, following the DRG trial, Paige Bartley, a licensed

clinical social worker ("LCSW") who had been providing therapy to Plaintiff once a week since February 2021, provided a statement regarding Plaintiff's mental health treatment. [R. 539.] LCSW Bartley noted symptoms of depression attributed to Plaintiff's pain and lack of sleep resulting from her injury. *Id.* While she acknowledged she is "not a medical doctor" and therefore cannot provide recommendations on Plaintiff's physical abilities, she provided a specific and detailed example of Plaintiff's walking ability and discomfort during their sessions. However, she did not provide additional treatment notes or reference examination findings to substantiate her opinion on Plaintiff's psychological abilities. *Id.*

Additionally, LCSW Bartley provided another opinion on a mental medical source statement form, indicating Plaintiff would be off task 25% or more of the workday, would need to be absent four days per month and, as a result, would be unable to maintain regular attendance or punctuality. [R. 28-29, 1003-05.] LCSW Bartley also noted that Plaintiff would be unable to work without needing an unreasonable number and length of rest periods and would have difficulty travelling to unfamiliar places or using public transportation. *Id.*

Secondly, Plaintiff was examined by Jennifer Cilino-Folks, Psy.D, a psychologist who provided a examination report. [R. 528-31.] Dr. Cilino-Folks found that Plaintiff would have "little to no difficulty responding appropriately to supervision, co-workers, or work pressure in a work setting." [R. 530.] However, she also noted that due to Plaintiff's anxiety and depressive symptoms, Plaintiff experienced "marked distress and impairment occupationally and in her interpersonal relationships." [R. 28.] Additionally, Dr. Cilino-Folks observed that Plaintiff was pleasant and cooperative, goal-directed, a good historian with a good fund of information, and had no difficulties relating to the examiner, understanding what was asked of her, and remembering pertinent information. [R. 28, 530.] The Plaintiff also maintained concentration and carried out

3

instructions during the evaluation. *Id.*

Both LCSW Bartley's and Dr. Cilino-Folk's statements contradicted documented mental status exams on record provided by two different state agency consultative psychologists, which were supplemented with treatment notes or references to examination findings. [R. 28-29, 66-69, 75-78.] The findings from both consultative psychologists indicated Plaintiff exhibited no concentration difficulties, no issues with persistence or maintaining pace, and no problems with adapting or managing herself. [R. 27, 66-69, 77-78.] They also noted that Plaintiff had only a mild limitation in understanding, remembering, or applying information and, thus, both consultative examiners ultimately concluded that Plaintiff did not have a severe mental impairment. *Id.*

### c. The ALJ's Decision

The ALJ's August 24, 2022 decision followed the familiar five-step sequential process for determining disability. [R. 15-31.] At Step 1, the ALJ found that Plaintiff met the insured status requirements of the SSA through March 31, 2026, and had not engaged in substantial gainful activity since her alleged onset date. [R. 15.]

At Step 2, the ALJ concluded that Plaintiff had the following severe impairments: left lower extremity CRPS and obesity. *Id.* The ALJ concluded that Plaintiff's back pain, history of asthma, pre-diabetic condition, and migraines, whether individually or in combination with other complaints or impairments, were "not severe." [R. 16.] Nonetheless, the ALJ considered Plaintiff's subjective complaints, medical history, and all medically determinable impairments when assessing Plaintiff's residual functional capacity ("RFC"). *Id.*; *see also* 20 C.F.R. §§ 404.1520(e), 404.1545. After considering the broad functional areas outlined in the disability regulations for evaluating mental disorders, known as the "paragraph B" criteria, as well as the listings of impairments, the ALJ found that Plaintiff's diagnosed mental impairments, including adjustment

4

disorder with mixed depression, anxious mood, and major depressive disorder, did not significantly limit Plaintiff's ability to perform basic mental work activities. [R. 17.] As a result, the ALJ also deemed these impairments non-severe. *Id.*

At Step 3, the ALJ concluded that Plaintiff's impairments, alone or in combination, did not meet or medically equal a Listing under 20 C.F.R. 404, Subpart P, Appendix 1. [R. 19-23.] Prior to Step 4, the ALJ determined that Plaintiff retained the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), subject to the following limitations: can never climb ladders, ropes, scaffolds, and no more than occasionally climb ramps/stairs, balance, stoop, crouch, kneel, and crawl; should have a sit-stand option allowing her to stand 1-2 minutes after sitting for 45 minutes; avoid concentrated exposure to pulmonary irritants, extreme wetness, extreme cold, and work hazards, such as unprotected heights and dangerous moving machinery; and not be required to walk over uneven terrain or reach overhead for work-related purposes.[3] [R. 23.] Despite inconsistencies in Plaintiff's testimony regarding her ability to walk, sit, and drive, the ALJ noted she still considered Plaintiff's subjective assertions when formulating the RFC. [R. 26.]

The ALJ found the opinions of the state agency medical consultants persuasive, considering their expertise in evaluating disability claims and the fact they specifically cited and referred to medical treatment notes and objective findings to support their determinations. [R. 27.] Conversely, the ALJ regarded the opinions of Plaintiff's consultative psychologist, Dr. Cilino-Folks, as "inherently inconsistent." [R. 28.] The ALJ noted that Dr. Cilino-Folks did not offer a clinical explanation underlying her opinions, nor did she reference any specific treatment notes or identify objective examination findings to support her opinion. *Id.* Additionally, the ALJ was not

---

[3] However, the ALJ found no corroborating evidence to support Plaintiff's claim of inability to lift her hands above her head. During examination, she demonstrated a full range of motion in her upper extremities. [R. 536.] Even if this limitation were present, the ALJ was assured by the Vocational Expert that the jobs listed would still be viable options. [R. 59.]

5

persuaded by the opinion of LCSW Bartley due to the absence of specific treatment notes or references to examination findings in support of her opinion. [R. 28-29.]

At Step 4, the ALJ concluded Plaintiff would be able to perform her past relevant work as a telephone solicitor, customer complaint clerk, order clerk, insurance agent, and customer service supervisor. [R. 29.] While the ALJ could have concluded the analysis at that point (*see* 20 C.F.R. §§ 404.1520(a)(iv), 416.920(a)(iv) ("If you can still do your past relevant work, we will find that you are not disabled."), the ALJ chose alternatively to proceed to Step 5 of the analysis and found (based on the testimony of the Vocational Expert) that jobs existed in significant numbers in the national economy that Plaintiff could perform considering her education, age, work experience, and RFC. [R. 31.] Accordingly, the ALJ concluded that Plaintiff did not meet the criteria for disability, as defined by the SSA, from her alleged onset date of disability of March 9, 2020, through the date of the ALJ's decision on August 24, 2022. *Id.*

## II. STANDARD OF REVIEW

The Court does not "merely rubber stamp the ALJ's decision on judicial review." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). However, the Court does review the ALJ's decision deferentially; the ALJ must "build an accurate and logical bridge" between the evidence and the conclusion. *Hess v. O'Malley*, 92 F.4th 671, 676-77 (7th Cir. 2024). To build this accurate and logical bridge, "[a]ll [that is] require[d] is that ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the] reviewing court, to assess the validity of the agency's ultimate findings and afford [Plaintiff] meaningful judicial review." *Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024) (signals and citation omitted). While the reviewing court "generally must assess the lawfulness of an agency's action in light of the explanations the agency offered," the agency is not required to follow a "particular formula or incant magic words."

6

*Garland v. Ming Dai*, 593 U.S. 357, 369 (2021).

When reviewing the ALJ's decision, the Court's inquiry is limited to determining whether the ALJ applied the correct legal standards and whether the decision is supported by substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103, 139 (quotation and citations omitted). This deferential standard precludes the Court from reweighing the evidence or substituting its judgment for the ALJ's. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). The Court may reverse the ALJ's decision "only if the record compels" such a conclusion. *Id.* Consequently, if there is substantial evidence that supports the ALJ's conclusions, the Court "must affirm even if 'reasonable minds differ concerning whether [the Plaintiff] is disabled.'" *L.D.R. by Wagner v. Berryhill*, 920 F.3d 1146,1152 (7th Cir. 2019) (citation omitted).

## III.  DISCUSSION

Plaintiff argues (1) that the ALJ's mental health determination is not supported by substantial evidence because the ALJ rejected all of Plaintiff's treating and examining treatment providers' medical opinions (despite some of those providers seeing her on multiple occasions), and instead improperly relied on state agency opinions [Dkt. 22 at 13]; and (2) the ALJ failed to properly evaluate Plaintiff's "subjective complaints of pain in light of the unique nature of CRPS." [Dkt. 22 at 9-13.] The Court disagrees on both grounds, and finds more than a mere scintilla of evidence and a logical bridge leading to the ALJ's decision. The Court accordingly affirms the ALJ's decision.

### a.  The ALJ Did Not Err Concerning the Mental Health Opinions

Plaintiff contends the ALJ erred by rejecting medical opinions based on the two treating or

7

examining relationships and instead relying on two state agency opinions, resulting in a determination not supported by substantial evidence. [Dkt. 22 at 9-10.] Specifically, Plaintiff contends the ALJ: (1) should have prominently considered the longitudinal perspective of Plaintiff's treating source, LCSW Bartley, and did not clearly articulate how persuasive she found Dr. Cilino-Folks's opinion before rejecting it; and (2) "had a duty to" recontact treating physicians because the medical evidence was insufficient. [*Id*. at 10-11.] The Court disagrees with the first count. Regarding the second count, while it is argued that the ALJ should recontact the treating physician if the medical evidence is insufficient, the Court finds the record was sufficient in this instance and did not require supplementation.

In this case, Plaintiff incorrectly relies on outdated law concerning the "treating source rule." Plaintiff argues the ALJ erred in evaluating the medical opinion evidence, specifically by giving more weight to the opinions of the non-examining physicians. [Dkt. 22 at 9.] Since Plaintiff filed her claim in January 2021, the treating source rule used for claims filed before March 27, 2017 does not apply. This means the ALJ was not required to "defer or give any specific evidentiary weight" to any medical opinion, including a treating physician's opinion, but rather must articulate her consideration of all medical opinions. 20 C.F.R. § 404.1520c(a)-(b). *See* also Social Security Administration, Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819 (Jan. 18, 2017).

Instead, the ALJ is required to evaluate the persuasiveness of each medical opinion based on specific factors: (1) supportability, (2) consistency, (3) the medical source's relationship with the claimant, (4) specialization, and (5) other relevant factors, such as the source's familiarity with other evidence in the claim and understanding of Social Security disability policies and requirements. *Michelle D. v. Kijakazi*, No. 21-cv-1561, 2022 WL 972280, at *4 (N.D. Ill. Mar. 31,

8

2022) (citing 20 C.F.R. § 404.1520c(c)(1)-(5)). While the ALJ must explain how she considered the first two factors, supportability and consistency, the ALJ may, but is not required to, explain her consideration of the other factors. *See* 20 C.F.R. § 404.1520c(b)(2). Supportability is measured based upon "how much the objective medical evidence and supporting explanations presented by a medical source support the opinion." *Michelle D.*, 2022 WL 972280, at *4 (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency assesses how a medical opinion squares with other evidence in the record." *Id.* (citing 20 C.F.R. § 404.1520c(c)(2)). Moreover, an ALJ can rely on state-agency medical consultants if their opinions are consistent with the evidence. *Zoch v. Saul*, 981 F.3d 597, 602 (7th Cir. 2020).

Plaintiff's objection that the ALJ committed reversible error by failing to consider the length, extent, and nature of her treatment relationship with LCSW Bartley, or the frequency of Plaintiff's visits with her, is unavailing. [Dkt. 22 at 10-11.] To begin, the ALJ was not required to discuss these factors specifically in her decision. *See* 20 C.F.R. § 404.1520c(b)(2). Additionally, the ALJ was clearly aware of the length and scope of the treatment relationship, as reflected in her recitation of the medical record. [R. 28-29.] The ALJ sufficiently built a logical bridge between the evidence in the record and her conclusion regarding LCSW Bartley's opinion, allowing the Court to trace her reasoning. *Charles M. v. Comm'r of Soc. Sec.*, No. 19-cv-1178-JES-JEH, 2021 WL 779979, at *3 (C.D. Ill. Mar. 1, 2021) ("The ALJ need not draft a novel to explain her reasoning. She must minimally articulate it, such that a reviewing court can trace her reasoning and her decision can be subjected to meaningful review.").

For instance, the ALJ dedicated roughly two pages of her decision to explaining her considerations of LCSW Bartley's statements regarding Plaintiff's concentration, which was dependent on Plaintiff's pain levels and symptoms of depression at the time. [R. 28-29.] The ALJ

acknowledged Plaintiff had been seeing LCSW Bartley, who was not a medical doctor, weekly for nearly eight months when LCSW Bartley rendered her opinion. *Id.* After acknowledging and considering LCSW Bartley's observations relating to Plaintiff's limp during therapy sessions, the ALJ explained that she did not find LCSW Bartley's opinion to be well-supported by medically accepted clinical and laboratory diagnostic techniques and found it inconsistent with other substantial evidence in the case record and, thus, unpersuasive. [R. 27-29.]

In contrast, the ALJ found the state agency consultative opinions "persuasive…as they are experts in the evaluation of disability claims and they identified/referred to specific medical treatment notes and objective findings in support of their determination." [R. 27 (citations omitted).] Both state agency psychologists reviewed the record and found that Plaintiff had mild limitations overall and did not have severe mental impairments. [R. 66-69, 75-78.] The ALJ considered these two prior administrative findings, noting that despite being conducted at different times, they were supported by and consistent with the overall record and each other. The Court finds the ALJ provided an adequate explanation for rejecting LCSW Bartley's mental health opinions (based on a treating relationship) in favor of the state agency consultants' opinions. The ALJ did not err in this respect.

Also unavailing is Plaintiff's conclusion that the ALJ did not clearly articulate why she found Dr. Cilino-Folks's opinion unpersuasive. In doing so, the ALJ first explained that Dr. Cilino-Folks's own treatment notes did not support her overall opinion. [R. 28.] Dr. Cilino-Folks also failed to provide underlying clinical explanations for her opinion. [R. 79.] Moreover, the ALJ found that Dr. Cilino-Folks's mental health determination also was inherently inconsistent and contradicted her own statements, evaluations and other medical records. The ALJ supported this finding by referring to specific treatment notes and objective exanimations findings made by the

10

state agency reviewers. *See Yvonne K. C. v. Kijakazi*, No. 20-cv-1147, 2022 WL 1104506, at *4 (N.D. Ill. Apr. 13, 2022) (explaining that the ALJ reasonably concluded that the treating physician's opinion was inconsistent with other objective evidence in the record, like other physicians and treatment notes, therefore, deemed the opinion to be unpersuasive).

For instance, Dr. Cilino-Folks opined that Plaintiff would have "little to no difficulties in relating to co-workers, supervisors, or in responding appropriately to work pressures," yet also indicated Plaintiff was markedly impaired occupationally and in her interpersonal relationships. [R. 28, 530-31.] This internal inconsistency and lack of supporting clinical evidence further justified the ALJ's decision to discount Dr. Cilino-Folks's opinion. The Court finds the ALJ more than adequately "minimally articulated" her reasoning for rejecting Dr. Cilino-Folks's opinions. *See Michelle D.*, 2022 WL 972280, at *4-5. ("In sum, the regulation required the ALJ to articulate why she found [the] medical opinion unsupported and inconsistent with the record, and no more. *See* 20 C.F.R. § 404.1520c(b)(2). Because the ALJ did just that, she did not err in dismissing [the] opinion").

For all these reasons, the ALJ reasonably concluded that Dr. Cilino-Folks's opinion was unpersuasive because it was not supported by or consistent with the record evidence. Moreover, the ALJ properly adhered to current regulations in weighing all mental health evidence. Accordingly, the Court cannot remand based on the ALJ's consideration of the mental health opinion evidence here.

Secondly, Plaintiff argues that the ALJ's characterization of LCSW Bartley's testimony as "unclear" triggered a duty to seek additional evidence regarding Plaintiff's depression, specifically related to limitations in maintaining attention for more than two-hour periods, regular attendance, and the need for an unreasonable number of absences from work. [R. 539, 1005.] The Court

11

disagrees. The ALJ did not state that the evidence was insufficient for her to use the entire record holistically to reach a decision, but rather that it was insufficient to give weight to or consider the opinions from Plaintiff's treating/examining mental health providers as persuasive. [R. 28-29.]

When "a [Plaintiff] has counsel at the agency level, [she] is presumed to have put forth [her] best case" before the ALJ. *Equitz v. Kijakazi*, No. 21-2563, 2023 WL 4636446, at *2 (7th Cir. July 20, 2023) (citing *Summers v. Berryhill*, 864 F.3d 523, 527 (7th Cir. 2017)). Moreover, "Plaintiff having been diagnosed with [any] impairments does not mean they imposed particular restrictions on her ability to work…It was [Plaintiff's] burden to establish not just the existence of the conditions, but to provide evidence that they support specific limitations affecting her capacity to work." *Weaver v. Berryhill*, 746 F. App'x 574, 578-79 (7th Cir. 2018) (internal quotation marks omitted). Plaintiff has failed to meet that burden. During the Administrative Hearing, Plaintiff requested that the record remain open to allow time to receive additional records from Mosaic Counseling and Wellness, where LCSW Bartley works. [R. 994-1005.] The ALJ granted an extra 30 days for Plaintiff to obtain and submit these records. [R. 41, 306.] Here, the Plaintiff submitted two additional records including an assessment report and a Mental Medical Source Statement from LCSW Bartley. [R. 994-1005.] Nonetheless, the ALJ found all opinions obtained from LCSW Bartley unpersuasive as she had failed to "identify any specific treatment notes or refer to any examination findings as support for her opinion." [R. 28.] Given this ample opportunity to provide additional evidence supporting her claim, the ALJ cannot be faulted for finding LCSW Bartley's opinions unpersuasive.

Additionally, the ALJ is obligated to contact a medical source only when the submitted evidence is inadequate to make a disability determination. *Vincent A. v. Berryhill*, No. 16-cv-7136, 2019 WL 2085104, at *5 (N.D. Ill. May 13, 2019); 20 C.F.R. §§ 404.1512(a), 404.1520b(b). If the

ALJ encounters difficulty in evaluating the medical evidence in the record, the regulations offer several avenues for the ALJ to pursue. These options include requesting additional records, recontacting the treating physician, and ordering a consultative examination. *See* 20 C.F.R. § 404.1520b(b). However, the ALJ is not required to recontact the medical source so long as the record "contain[s] adequate information for the ALJ to render a decision." *Britt v. Berryhill*, 889 F.3d 422, 427 (7th Cir. 2018).

Under Plaintiff's interpretation of the regulations, recontacting a medical source is mandatory to obtain additional information if the ALJ has questions about a source's opinion. [Dkt. at 10.] This is not so. Under 20 C.F.R. § 404.1520b(c)(1), which governs Plaintiff's benefits request, an ALJ "*may*" but is not *required* to "recontact your treating physician, psychologist, or other medical source." *Skinner v. Astrue*, 478 F.3d 836, 843 (7th Cir. 2007). In this case, the entirety of the record (specifically including the opinions of the state agency consultants, Howard Tin, Psy.D and Margaret DiFonsi, Psy.D) was sufficient for the ALJ to reach a disability determination. The Court in *Bailey v. Colvin* stated, "an ALJ need not solicit additional information if she simply finds a physician's opinion unsupported," likewise, here the ALJ found that neither the treating nor examining mental health opinions referenced any treatment notes or examination findings to substantiate their opinions concerning Plaintiff's psychological abilities. [R. 28, 530-39.] *Bailey v. Colvin,* 2015 WL 7251939, at *8 (N.D. Ill. Nov. 17, 2015). *See, e.g., Buirge v. Berryhill*, No. 17-cv-5448, 2018 WL 4144621, at *3 (N.D. Ill. Aug. 30, 2018) (no error found where the ALJ deemed physician's stated restrictions "unclear" but did seek additional information from physician because ALJ made disability determination based on holistic review of record); *Mullinax v. Astrue*, No. 1:08-cv-0284TABWTL, 2009 WL 899658, at *4 (S.D. Ind. Mar. 31, 2009) (holding there was ample evidence in the record to determine disability and therefore no need to

13

recontact medical sources where ALJ had the benefit of treatment notes, objective testing, consultative examinations, the opinion of a state agency medical consultant, the opinions of specialists, and the testimony of three medical experts).

Considering it was Plaintiff's burden of proof to provide evidence to support specific limitations affecting her capacity to work, the additional time granted Plaintiff to obtain further medical evidence, and the ALJ's reliance on opinions from state agency consultants, the ALJ acted consistently with the discretion permitted by applicable regulations and the law. Therefore, the Court finds no error in the ALJ's decision not to recontact LCSW Bartley. Accordingly, remand on this basis also is unwarranted.

### b. The ALJ Properly Evaluated Plaintiff's Subjective Complaints of Pain Related to her Complex Regional Pain Syndrome

Plaintiff next argues the ALJ drew improper and unsupported conclusions in evaluating her subjective allegations, particularly given the unique nature of CRPS, and thus contends that remand is warranted. [Dkt. 22 at 13-14.] The Court disagrees and affirms the ALJ's subjective symptom analysis. A mere diagnosis of an impairment does not typically entitle a claimant to benefits. *Thompson v. Colvin*, 575 F. App'x 668, 677 (7th Cir. 2014). Similarly, a claimant's assertions of pain, taken alone, are not conclusive of a disability. *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (citing 42 U.S.C. § 423(d)(5)(A)).

Social Security Ruling ("SSR") 16-3p states that evaluating a claimant's self-reported impairments involves a two-step process. Initially, the ALJ is required to assess whether there exists a medically determinable physical or mental impairment(s) that could reasonably be expected to cause the reported symptoms, including pain. *See* SSR 16-3p, at *2. If such an impairment is identified, the ALJ must subsequently analyze the intensity and persistence of these symptoms to determine their impact on the claimant's ability to engage in work-related activities.

*Id.* When assessing a claimant's symptoms, "an ALJ must consider several factors, including the claimant's daily activities, her level of pain or symptoms, aggravating factors, medication, treatment, and limitations, . . . and justify the finding with specific reasons." *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009); *Charles B. v. Saul*, No. 19-cv-1980, 2020 WL 6134986, at *6 (N.D. Ill. Oct. 19, 2020).

The Court affords special deference to an ALJ's assessment of a claimant's subjective symptoms and will only overturn it if found to be "patently wrong," lacking any explanation or support. *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) ("[T]he ALJ's determination was not patently wrong because of the many specific reasons the ALJ cited from the record."). Reviewing courts should rarely disturb such assessments due to their inability to observe claimants during testimony. *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006).

Moreover, obtaining disability benefits for CRPS can be particularly challenging due to the often-conflicting evidence in the medical record. *See* SSR 03-02p. This is largely because CRPS tends to have transitory objective findings and where the reported pain severity is disproportionate to the injury sustained by the individual. *Id.* Again, the burden of proof falls on Plaintiff to provide records and evidence to substantiate her claim of disability. *Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). Therefore, it was crucial for Plaintiff to demonstrate treatment consistent with her subjective complaints to strengthen the credibility of her statements regarding the severity and frequency of her pain. *Id.*

The ALJ adequately cited specific reasons from the record that justified discounting Plaintiff's subjective complaints. [R. 26-28.] Contrary to Plaintiff's contention, the ALJ did not exclusively rely on objective evidence to evaluate her subjective symptoms. *Id*. Plaintiff argues

the ALJ failed to consider her testimony regarding the need to lie down during the day due to CRPS, which would implicate the Vocational Expert's testimony on workplace tolerance for such accommodations. [R. 60; Dkt. 22 at 14.] In discounting Plaintiff's testimony, the ALJ adhered to the regulation mandating consideration of whether Plaintiff's symptoms align reasonably with objective medical evidence and other relevant factors. *See* 20 C.F.R. § 404.1529(a). Specifically, the ALJ noted disparities with objective medical findings from two separate state agency consultants over different periods, which indicated only mild or slight swelling in the Plaintiff's lower left and bilateral lower extremities. [R. 27.] Additionally, the ALJ noted the absence of documented medical advice or recommendations in Plaintiff's treatment records advocating lying down, reclining, or elevating her legs during the day, which influenced this decision. *Id.* Hence, the ALJ provided multiple reasons and adhered to regulations when discounting Plaintiff's subjective complaint of needing to lie down during the day.

Despite the absence of objective medical documentation regarding Plaintiff's ability to walk and sit for extended periods, and despite Plaintiff's conflicting testimony stating she could only sit for 45 minutes and needed to get up 2-3 times per hour but that she could drive 2-3 hours straight [R. 26], the ALJ considered these complaints and included a sit-stand option in the decision. *Id.* This allowed Plaintiff to stand for one to two minutes after sitting for 45 minutes. [R. 26, 28.] The extensive accommodations made for Plaintiff's subjective complaints of pain demonstrate that the ALJ did not rely solely on objective medical evidence in evaluating her claims. Instead, the ALJ reasonably assessed her complaints, adhered to SSR 03-2p, and reasonably accommodated them within the RFC assessment by permitting a reduced range of sedentary work. [R. 26-28.] In fact, the ALJ pointed out the absence of medical records or other statements supporting why the Plaintiff would need to lie down frequently or elevate her feet, highlighting this specific inconsistency. *Id.*

16

Additionally, in other instances, the ALJ, despite the lack of supporting medical documentation, considered Plaintiff's subjective symptoms and adjusted the RFC accordingly. [R. 27-28.] For example, Plaintiff complained of pain, particularly with prolonged periods of standing and walking, discomfort due to weather changes, frequent stumbling, and the need to take extra time when sitting and standing. *Id.* The ALJ accommodated these complaints when determining the RFC without requiring additional objective documentation. *Id.*

This leads to the final argument Plaintiff makes, that the ALJ's failure to reference SSR 03-02p indicates a lack of understanding of the unique nature of CRPS. However, the ALJ's subjective symptom evaluation aligned with the essence of SSR 03-2p, even if the ALJ did not explicitly mention it. For instance, SSR 03-2p stipulates that

> whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. This includes the medical signs and laboratory findings, the individual's own statements about the symptoms, any statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record.

SSR 03-2p. Here, the ALJ meticulously reviewed the "entire case record" when objective medical evidence was lacking, thereby ensuring a comprehensive assessment of the Plaintiff's subjective symptoms when determining her RFC. Moreover, the ALJ is not required to follow a "particular formula or incant magic words." *Garland*, 593 U.S. at 369. Given that the ALJ's determination was not "patently wrong" and that valid reasons were provided for discounting Plaintiff's subjective testimony, which lacked consistency and supportability from the rest of the case record, the ALJ appropriately assessed Plaintiff's subjective symptoms. The Court will not remand on this basis.

## IV. CONCLUSION

For all of the foregoing reasons, Plaintiff's motion for summary judgment [Dkt. 21] is DENIED, and the Commissioner's motion for summary judgment [Dkt. 27] is GRANTED. The decision of the Commissioner is AFFIRMED.

ENTERED: July 30, 2024

Hon. Keri L. Holleb Hotaling,
United States Magistrate Judge